## JOHNSON *v.* THE STATE.

No. 16419. NOVEMBER 17, 1948.

*A. Tate Conyers,* for plaintiff in error.

*Eugene Cook, Attorney-General, Paul Webb, Solicitor-General, William T. Boyd, William Hall,* and *Rubye G. Jackson,* contra.

CANDLER, Justice. Howard Johnson and Jimmy Washington were jointly indicted for the murder of A. M. Goldstein. On·a separate trial Johnson was found guilty, without a recommendation of mercy, and sentenced to be electrocuted. His motion for new trial was overruled and he excepted.

Counsel for the plaintiff in error concedes that the evidence was sufficient to authorize the verdict, and expressly abandons

the general grounds of the motion. His only contention is that the charge on the law of confessions was unauthorized because the statements attributed to the defendant did not amount to a plenary confession of guilt, and were, at most, only incriminatory admissions. No objection is made to the charge as an abstract principle of law, and our only consideration will be as to the sufficiency of the statements to authorize such a charge. It is well settled that a charge on the law of confessions, when unauthorized by the evidence, constitutes reversible error. *McCloud* v. *State*, 166 *Ga.* 436, 441 (143 S. E. 558).

The State introduced a written statement signed by the defendant, and evidence of two oral extrajudicial statements made to the investigating officers. The defendant also made a statement to the jury. Each statement was exculpatory to the extent of stating that Washington inflicted the fatal blow; however, it is the contention of the State that the defendant and Washington entered into a conspiracy to rob the deceased and that the killing was a consequence of such unlawful design. The existence of a conspiracy to do an unlawful act may be shown by circumstantial evidence (*McLeroy* v. *State*, 125 *Ga.* 240, 54 S. E. 125) ; and a joint conspirator is responsible for the probable consequences of such unlawful act (*Gore* v. *State*, 162 *Ga.* 267, 134 S. E. 36). However, it must be kept in mind that we are not considering the question as to whether the evidence authorized the verdict, but whether the statements made by the defendant, standing alone, and without the aid of inferences, were sufficient to include every essential element necessary to establish the crime charged in the indictment.

As to what constitutes a plenary confession of guilt, so as to authorize a charge on that subject, it was said by this court in *Owens* v. *State*, 120 *Ga.* 298 (48 S. E. 21): " 'A confession, in criminal law, is a voluntary statement made by a person charged with the commission of a crime or misdemeanor, communicated to another person, wherein he acknowledges himself to be guilty of the offense charged, and discloses the circumstances of the act and the share and participation he had in it.' Black's Law Dict. . . 'A confession is a person's admission or declaration of his agency or participation in a crime, and is restricted to admissions of guilt.' 3 Am. & Eng. Enc. Law, 439. These definitions of a

confession imply an admission of every essential element necessary to establish the crime wherewith the defendant is charged. Unless the statement of the defendant is broad enough to comprehend every essential element necessary to make out the case against him, it can not be said to be an admission of guilt. There is a difference between an incriminating statement and a confession of guilt. In the former only one or more facts entering into the criminal act is admitted, while in the latter the entire criminal act is confessed. . . 'A confession is rather a fact to be proved by evidence than evidence to prove a fact. It is not so much proof that a particular thing took place as it is a waiver by the party charged of his right to have certain facts alleged against him technically proven.' Wharton on Crim. Ev. (9th Ed.) § 623. This conclusion of Mr. Wharton is in line with the decisions of our own court. The distinction in all of our cases is clearly drawn between the effect of admissions of fact from which the guilt of the accused may be inferred and the admissions of guilt itself. Incriminating statements, to be the equivalent of a confession of guilt, must be so comprehensive as to include every act necessary to be proved by the prosecution in order to establish the defendant's guilt."

The otherwise exculpatory statements made by the defendant in the present case would amount to a plenary confession of guilt only if sufficient to admit of a conspiracy to jointly rob the deceased or to do an unlawful act. When such a conspiracy is admitted to have existed between the parties, then the statements become inculpatory, even though it be stated therein that the fatal blow was inflicted by the joint conspirator. Therefore, one of the essential elements of the crime of murder, and one element that the State would otherwise have to prove in order to establish the guilt of the defendant, was the existence of a conspiracy between the joint indictees to do such unlawful act.

In our consideration of the several statements made by the defendant, to determine if a charge on the law of confessions was authorized, we must consider each separately and without aid or inference from another. If one of the essential elements of the crime is lacking in one statement, it cannot be supplied from another which in itself does not amount to a plenary confession. To be a confession, it must, standing alone, admit all the vital

elements of the crime. *Powers* v. *State*, 172 *Ga.* 1 (157 S. E. 195); *Pressley* v. *State*, 201 *Ga.* 267 (39 S. E. 2d, 478). In this respect neither statement made by the defendant was sufficient to show the existence of a conspiracy between the parties.

Concerning the oral statements, R. E. Little Jr., a detective, testified that "Howard Johnson stated to us that he and Washington were there, and that Johnson contended that Washington hit the old man with a bottle and took a pocketbook off of him and some papers." Dr. Herman D. Jones testified that Johnson "told us that this bottle was used, and that they got $10, I believe, that he and his associate divided that money." Both the witnesses also testified concerning statements made to them about the disposition of certain items taken from the body of the deceased. Neither of these oral statements shows the existence of a prior conspiracy to commit an unlawful act, and they are exculpatory in that they state that the killing was done by Washington. The material portion of the written statement is as follows: "I met with Jimmy Washington on Wednesday. He told me that he wanted to go down to Goldstein's place and get some money; that he hadn't worked but one day that week and needed some money. He said he would get the money and he didn't care how he would get it, beat him up, or do anything to get the money. He told me that he worked there Wednesday, and that he was to go back there Thursday evening. I went by there (Goldstein's place) Thursday, just before night, the whole gang was there then. I said nothing to Mr. Goldstein and left. I went by there with Jimmy Washington, and Jimmy went into work, but I didn't." Johnson then related in this statement that he later came back by the place and saw Washington hit Goldstein on the head with a bottle, put rags in his nose and mouth, and take a pocketbook and other items from him. Standing alone, this statement is lacking in the vital element that the parties had jointly conspired to rob the deceased. Such might be inferred by a jury from the statement, but that is not the legal test. This statement is distinguishable from that in *Bonner* v. *State*, 152 *Ga.* 214 (109 S. E. 291), strongly relied upon by the State. There the court said: "His confession showed that the crime of murder was committed, and that he [defendant] was present participating in the commission of the crime." And

"it contains the unequivocal statement that Sims had proposed to him [defendant] to meet him 'back down there, so they would go and kill him and get it' (the money)."

The statements attributed to the defendant only amounted to incriminatory admissions, and it was therefore error for the trial court to charge the law as it relates to confessions of guilt.

A joint conspiracy to do an unlawful act was clearly shown by the confessions in *Lowe* v. *State*, 125 *Ga.* 55 (53 S. E. 1038), and *Wright* v. *State*, 186 *Ga.* 863 (199 S. E. 209). In *Deering* v. *State,* 201 *Ga.* 756 (41 S. E. 2d, 154), the defendant was indicted and convicted of robbery by force and intimidation. None of these cases, cited and relied upon by the State, is controlling on the ruling here made.

*Judgment reversed. All the Justices concur.*