## JONES *vs.* THE STATE OF GEORGIA.

| 65 | 147 |
|-----|-----|
| f112 | 408 |
| 65 | 147 |
| 115 | 576 |
| 65 | 147 |
| 127 | 402 |

1. Where there is no evidence of confessions in a criminal case, it is error for the court to charge that confessions are to be received with great caution.

2. Where it is sought to charge a prisoner by reason of sayings of his wife in regard to the crime for which he is tried, and acquiesced in by his silence, such sayings must have been in his immediate presence, where he could hear distinctly all that was said; otherwise they would be inadmissible.

3. The name by which a deceased person was generally known is a proper designation in an indictment for his murder, though he might also have had another name. The question of name is for the jury

4. When the evidence presents solely the question of murder or innocence, the court need not charge concerning the other grades of homicide.

Criminal law. Charge of Court. Evidence. Before Judge Hood. Randolph Superior Court. November Term, 1879.

Jones was indicted for the murder of Hamp Jones, his step-son, a child about six years of age, and on the trial was found guilty. He moved for a new trial on the following, among other grounds:

(1.) Because the court charged that confessions must be received with great caution, when there was no evidence of any confessions.

(2.) Because the court admitted in evidence sayings of the wife of defendant in regard to the crime, some of which did not appear to be in his presence. [The officer who arrested defendant testified that he arrested both defendant and his wife; that she stated that on the night when the murder was charged the child had been put to bed, and water poured on the fire; that her husband locked the door and gave her the key, and they started to church with others; that on the way—at the gate—defendant told them to go on, he wanted to stop, and would overtake them; that he stopped and shortly afterwards overtook the party. Some of her statements were made on the way to the jail, others after they reached it; some were in the presence of defendant, others not; but he and his wife were in adjoining cells, and as the officer started out of the door, he heard defendant tell his wife she had better mind how she talked. These statements of the wife were objected to. The court held statements of the wife not admissible unless made in the presence of the husband; but he let the occurrence in the jail go to the jury in connection with defendant's warning to his wife, leaving them to judge of his opportunity to hear and reply.]

(3.) Because the court charged that if a conviction or acquittal under this indictment would be a bar to a subsequent indictment for the murder of Hamp Culbreth, the objection on the score of name was not good; if it would not be a good reply to such indictment, the objection would be good. [The deceased was the bastard child of defendant's wife before he married her. The evidence

showed that her name when the child was born was Charity Culbreth, that his father's name was Adam Culbreth, that the child was simply known as Hamp up to the time its. mother married defendant, and after that was called Hamp Jones.]

(4.) Because the court stated to the jury that he did not consider it necessary to give in charge the law touching the lower grades of homicide, as in his view of the case there could be no intermediate verdict between guilty and not guilty. [The evidence showed that the body of the child was found in the fire-place, and indicated from marks about the person and bed that the deceased had been strangled with a cord, and the body placed in the fire to obliterate the marks. The defense was that the child fell in the fire and was burned to death. There *was no evidence tending* to reduce the killing, if defendant did it.]

The motion was overruled, and defendant excepted.

B. S. & W. C. WORRILL; R. E. KENNON, for plaintiff in error.

R. N. ELY, attorney-general; JAMES T. FLEWELLEN, solicitor-general, for the state.

JACKSON, Justice.

The defendant was indicted for the murder of a child six years old, the little son of his wife, was found guilty, and excepted. The case was before us at the last term, when a new trial was granted. - It is now before us again; and the law demands the grant of another new trial.

1. Among the grounds of the motion for the new trial is one that the court erred in charging the jury on the subject of confessions of guilt when there were none. In *Dumas vs. The State*, decided last term, it was ruled that where the defendant had made no confessions of guilt, and the court charged that confessions of guilt should be

received with great caution, it was such error that a new trial ought to be granted; and in that case, as in this, it was the second application for a new trial. The ruling in that must control this case. To charge upon an imaginary state of facts not in proof is error; because the jury may be misled to believe that the court was of the opinion that the case turned on facts in testimony which had escaped their attention; as in such case as this—that the defendant must have confessed that he was guilty, because the judge said so, and cautioned the jury to look carefully into the confessions and receive them with great caution.

2. As the case must be tried again, we wish to say further that the sayings of the wife of defendant, not in his presence, are clearly inadmissible, as ruled by the presiding judge as we understand his ruling; but we are not able to discriminate, as the evidence is transmitted to this court in this record, what she said in presence of the defendant and what she said when not in his presence. To admit them against the defendant, we are clear that they should have been said by her in his immediate presence, and where he could distinctly hear all that she said, and not that he should have been in an adjoining room or cell, where he could not hear all and have his direct attention drawn to what she said. The principle on which such testimony is admissible at all is, that by not denying or explaining what is said in his presence touching a transaction in which he is interested, the party interested acquiesces in the truth of the statement. Before he can be considered as acquiescing by silence he must be where he can hear and understand what is said, and the witness against him must be certain thereby that his attention was arrested by the narrative given of what had occurred in a transaction in which he was an actor.

3. The question as to the name of the child killed was a question for the jury, and whatever name he was generally known by was his proper designation in the indictment, and the evidence is clear that the name set out in.

the indictment is that by which he was known in the neighborhood.

4. If this child came to his death by being killed by some person, it is a clear case of murder, and manslaughter in any grade or species of it, did not enter into the investigation; and the judge was right not to encumber the case and confuse the issue before the jury by explaining the law of manslaughter and the line of distinction between it and murder.

The questions are but two : First, did this child fall into the fire accidentally and thus die, or was its life taken by some person? And second, if some person killed him, was the defendant that person? These questions appear to have been legally and fairly given to the jury without substantial error by which defendant could have been hurt.

We award the new trial because the case of *Dumas vs. The State*, absolutely covers this on the point of the charge on the subject of confessions. of guilt, when there is no evidence that the defendant ever made any confession at all, and because some of the statements of the wife of defendant appear to have been admitted in evidence when they were made not in his presence. If any were made in his presence, those should be admitted on the next trial; all made when he was not presents should be excluded.

We forbear to say anything on the facts of the case, because the new trial should be had, and the verdict rendered free from any intimation of our opinion in regard to the guilt or innocence of the accused.

Judgment reversed.